IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**ALPHONSO JAMES, SR.,**

    **Plaintiff,**

vs.                                                                                 Case No. 4:15cv173-RH/CAS

**JULIE L. JONES,**

    **Defendant.**

_____/


## SECOND REPORT AND RECOMMENDATION

In late March 2015, Defendant filed a notice of removal, doc. 1, and shortly thereafter, a motion to dismiss, doc. 4.  On April 9, 2015, Plaintiff filed a motion to strike the notice of removal.  Doc. 5.  The motion was denied in an Order explaining to Plaintiff why jurisdiction was appropriate in this Court.  Doc. 7.  Plaintiff was given until May 15, 2015, to respond to Defendant's motion to dismiss.  *Id.*

On April 20, 2015, Plaintiff then filed a motion to remand, doc. 9, and a Report and Recommendation was entered recommending the motion be denied.  Doc. 12. Additionally, Plaintiff filed a response, doc. 11, to the earlier Order, doc. 7, which was construed as a motion for reconsideration because Plaintiff once again argued that this case should be remanded to state court.  Doc. 11.  The motion for reconsideration was

denied and the basis for this Court's jurisdiction was once again explained to Plaintiff. Doc. 13. That Order also, once again, directed Plaintiff to respond to the motion to dismiss. Doc. 13.

Plaintiff did not respond to the motion to dismiss, but filed an objection to the Report and Recommendation. Doc. 15. An Order was entered by United States District Judge Robert Hinkle on May 18, 2015, denying Plaintiff's motion to remand, doc. 9, and adopting the Report and Recommendation. Doc. 16. That Order again explained why jurisdiction was appropriate in this Court. *Id.* On May 27, 2015, another Order was entered by the undersigned, directing Plaintiff to file a response to the motion to dismiss by June 17, 2015. Doc. 17.

Plaintiff did not respond to the motion but, instead, filed a motion to alter or amend judgment. Doc. 18. Because judgment has not been entered in this case, Plaintiff's motion was construed as a successive motion for reconsideration. *See* doc. 19. As Plaintiff was requesting this "Court to reconsider the decision rendered" in this case to deny his motion to remand, doc. 18, that construction was appropriate. Because Plaintiff was *again* arguing that "there is no federal question presented on the face of" Plaintiff's complaint, an argument already presented and addressed in numerous orders, Plaintiff's motion for reconsideration was denied. Doc. 19.

For the fourth time, Plaintiff was directed to respond to Defendant's motion to dismiss. Doc. 19. Plaintiff was reminded of the June 17, 2015, deadline to file his response. Plaintiff still has not responded to the motion to dismiss but, instead, filed a motion for disqualification or recusal. Doc. 20. That motion has been denied in a separate order entered this day.

Plaintiff was advised that "[f]ailure to file a responsive memorandum [to Defendant's motion to dismiss] may be sufficient cause to grant the motion."  Doc. 17 at 1 (quoting N.D. Fla. Loc. R. 7.1(C)(1)).  Plaintiff was also advised "that if Defendant's motion to dismiss is found to have merit and it is concluded that Plaintiff did not exhaust administrative remedies as required, his case will be dismissed for failure to state a claim and he may receive a "strike" under 28 U.S.C. § 1915(e)(2)."  *Id.*  Plaintiff was first given a May 2015 deadline to respond, docs. 7 and 13, and then an extended deadline of June 17, 2015.  Two separate Orders were entered advising Plaintiff of that deadline.  Docs. 17, 19.  No further extensions of time should be provided and, for the reasons explained below, the motion to dismiss should be granted.

**Complaint**

For ease of reference, the Clerk was required to separate Plaintiff's complaint from the state court record filed with the notice of removal.  Doc. 7.  Plaintiff's complaint has been filed as document 8.  Plaintiff titled his complaint as a "Tort Complaint" and asserts a claim based on the Florida Tort Claims Act, § 768.28, and an "action for contribution pursuant to § 768.31" of the Florida Statutes.  As has been noted in the many orders entered in this case concerning Plaintiff's request for removal, the complaint is based on Plaintiff's allegation that he identifies his religious faith as "Hebrew Israelite Nazarite."  He alleges that when he "arrived at R.M.C. Lake Butler, Florida," he was ordered "to get a shave and hair-cut according to Florida Administrative Code."  Doc. 8 at 3.  Plaintiff contends that the order was carried out on an unspecified date.  He claims that the forced shave and haircut infringed upon his right to the free

exercise of his religious beliefs as protected by the First Amendment of the United States Constitution and the Florida Constitution.

**Motion to Dismiss**

Defendant raises sovereign immunity as a defense to Plaintiff's claim for monetary damages, and further argues that Plaintiff's claim for negligence is insufficient because he does not allege that Department of Corrections' officials were negligent. Doc. 4 at 2-3. Rather, Plaintiff challenges the application of Rule 33-602.101 and contends it violates his rights. *Id.* Moreover, Defendant contends that Plaintiff's First Amendment claim "should be dismissed for Plaintiff's failure to exhaust his administrative remedies prior to filing suit." *Id.*

**Analysis**

### a. State law claims

Plaintiff's claims brought pursuant to § 768.28 and § 768.31 cannot proceed because Plaintiff has not shown that he complied with the pre-suit requirements. Florida law provides:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . .

FLA. STAT. § 768.31(6)(a). "Florida courts strictly construe this notice requirement and a plaintiff must allege in the complaint that he complied with the notice provisions of Section 768.28(6)." Levine v. Dade Cnty. Sch. Bd., 442 So.2d 210, 212-13 (Fla. 1983)

(cited in Smith v. Rainey, 747 F. Supp. 2d 1327, 1337 (M.D. Fla. 2010)).  Plaintiff has not alleged that he met this condition precedent and, thus, his claims cannot proceed.[1]

Additionally, the state of Florida and its agencies has waived sovereign immunity for tort claims in enacting FLA. STAT. § 768.28.  See Holder v. Gualtieri, No. 8:14-CV-3052-T-33TGW, 2015 WL 1880782, at *7 (M.D. Fla. Apr. 24, 2015). Notwithstanding the broad scope of the waiver of sovereign immunity, an exception to that waiver exists for "policy-making, planning or judgmental government functions." Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010, 1020 (Fla. 1979) (cited in Dep't of Health & Rehabilitative Servs. v. Yamuni, 529 So. 2d 258, 259 (Fla. 1988)). Those types of governmental decisions "cannot be the subject of traditional tort liability." Commercial Carrier Corp., 371 So. 2d at 1020.  What distinguishes the exception is analysis of whether the challenge is to a "planning" or "operational" level decision. "Generally, planning level functions require basic policy decisions, while operational level functions implement policy."  Farabee v. Rider, 995 F. Supp. 1398, 1403 (M.D. Fla. 1998) (citing Commercial Carrier Corp., 371 So.2d at 1021).  "Operational functions are not necessary to or inherent in policy or planning, they merely reflect a secondary decision as to how these policies or plans are implemented."  Farabee, 995 F. Supp. at 1403 (citing Kaisner v. Kolb, 543 So.2d 732, 737 (Fla. 1989)); see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1118 (11th Cir. 2005).

---

[1] Construed liberally, Plaintiff's complaint could be construed to allege that his informal grievance dated October 21, 2014, was intended to provide notice to the Department pursuant to § 768.28(6)(a).  See doc. 8 at 2, ¶5.  However, Plaintiff did not allege that he also presented the claim in writing to the Department of Financial Services as required.

"Thus, operational functions are not entitled to immunity." *Id.* (citing Kaisner, 543 So.2d at 736); *see also* doc. 4 at 5-6.

Although Plaintiff makes the conclusory allegation in the complaint that the assistant warden, warden, and secretary of the Florida Department of Corrections committed "negligent or wrongful acts or omissions . . . within the scope of their employment," *see* doc. 8 at 4, it is evident that Plaintiff is not challenging a secondary decision in how to implement a policy. Plaintiff's complaint challenges the fact that a shave and hair cut is required under Rule 33-602 of the Florida Administrative Code. *Id.* at 3. Plaintiff alleged that when he was ordered to have a shave and hair cut, "[t]he officers did their job . . . ." *Id.* Plaintiff does not allege any facts which would show that the officers or persons who carried out the order did so unlawfully, negligently, or maliciously. *See* doc. 4 at 6. Thus, Plaintiff's complaint necessarily challenges the rule itself. In that light, it is "quasi-legislative policy-making" which may not be challenged under Florida's tort claim act. The motion to dismiss the state law claims on the basis of sovereign immunity should be granted.

   b.   **Federal claim**

Defendant contends that Plaintiff did not exhaust administrative remedies as required. Doc. 4 at 6-10. When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (quoted in doc. 4 at 6). The exhaustion requirement of § 1997e(a) is mandatory and there is no discretion to waive this

requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323); Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001) (concluding that prisoner must complete the prison administrative process if it could provide some sort of relief on the complaint even though no money could be given administratively). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[2] "Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit." Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Porter, 534 U.S. at 525, 122 S.Ct. at 988).

A prisoner must also comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In

---

[2] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).

Exhaustion is an affirmative defense that is properly raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008); Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008); Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue."). Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. As noted above, Plaintiff has had over two months to gather the necessary documents and prepare his response to this argument as raised by Defendant in the motion to dismiss. He was directed to respond in four separate court Orders, docs. 7, 13, 17, and 19, but has not filed a response. Further delay is unnecessary.

Case No. 4:15cv173-RH/CAS

**Exhaustion Process**

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103. Doc. 4 at 8. The grievance program, as relevant to this type of issue,[3] consists of a three-step grievance process: the filing of an informal grievance, a formal grievance, and then a grievance appeal. FLA. ADMIN. CODE R. 33-103.011. Pursuant to the Department's rules, an inmate must submit an informal grievance "within 20 days of when the incident or action being grievance occurred . . . ." FLA. ADMIN. CODE R. 33-103.011(1)(a). "Following the initial receipt of an informal grievance, a written response shall be completed within 10 calendar days." FLA. ADMIN. CODE R. 33-103.011(3)(a).

If the issue is not resolved, an inmate may file a formal grievance which "must be received no later than 15 calendar days from the date on which the informal grievance was responded to." FLA. ADMIN. CODE R. 33-103.011(1)(b). The rules require the inmate to attach the informal grievance with its response to the formal grievance. FLA. ADMIN. CODE R. 33-103.006(2)(g). Prison officials then "have up to 20 calendar days from the date of receipt of the grievance to take action and respond." FLA. ADMIN. CODE R. 33-103.011(3)(b).

Thereafter, if the issue is still not satisfactorily resolved, the inmate may file an appeal to the Office of the Secretary. FLA. ADMIN. CODE R. 33-103.011(1)(c). The appeal must "be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." *Id.* The grievance appeal shall be

---

[3] Certain types of issues may be raised at the formal grievance level, bypassing the informal grievance process. FLA. ADMIN. CODE R. 33-103.005(1).

"responded to within 30 calendar days from the date of the receipt of the grievance." FLA. ADMIN. CODE R. 33-103.011(3)(c).  Similar to the requirements for submitting a formal grievance, an inmate must attach copies of his formal grievance and its response to the grievance appeal.  FLA. ADMIN. CODE R. 33-103.007(5)(a); *see also* doc. 4, ex. A at 2 (doc. 4-1).

Unless an inmate agrees in writing to an extension of time, "expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process."  FLA. ADMIN. CODE R. 33-103.011(4).  "If this occurs, the [inmate] must clearly indicate this fact when filing at the next step."  *Id.*

**Documentary Evidence**

Defendant's unopposed motion to dismiss reveals that Plaintiff submitted two appeals to the Office of the Secretary concerning the hair and beard length rule.  Doc. 4, Ex. A (doc. 4-1 at 1).  Both of those appeals "were returned without action" because "Plaintiff failed to comply with FDOC grievance procedures."  Doc. 4 at 9.  Defendant points out that Plaintiff's own exhibits as attached to the complaint indicate he did not properly exhaust administrative remedies.  *Id.*  One appeal was returned because he sought to file an appeal before correcting an error at the formal grievance step.  *Id.*  The other appeal was "returned without action" because Plaintiff did not first grieve the issue at the institution or provide "an adequate reason for skipping ahead to the grievance appeal."  *Id.* at 10.  Defendant contends that because Plaintiff did not comply with the grievance procedures, the complaint must be dismissed.  Doc. 4 at 9-10.

Defendant attached the affidavit of Shirley Johnson, the records custodian of all inmate grievance appeals to the Secretary, to the motion to dismiss.  Doc. 4-1.  She

notes that "FDOC's records show that Mr. James only filed two (2) grievance appeals" which dealt with the issue raised in this case. *Id.* at 1. She advises that both appeals "were returned without action" and states that an "inmate has not exhausted his administrative remedies with the Florida Department of Corrections until his grievance is denied, and that denial is appealed to the Secretary . . . and denied again." *Id.* at 2. "A grievance appeal that is returned without action does not constitute exhaustion of administrative remedies." *Id.*

The Johnson affidavit provides a summation of Plaintiff's grievance efforts, and that summary was used as the basis for the motion to dismiss. Notwithstanding, Defendant also attached Plaintiff's grievances to the motion to dismiss. Doc. 4-1. Those grievances have been reviewed and the chronological order is set forth in detail below.

The Court's review of the grievances reveals that Plaintiff submitted three informal grievances[4] directed to the attention of the assistant warden concerning the order to shave his face and cut his hair after arriving at the "Lake Butler Reception Center Processing." Doc. 4, attachment (doc. 4-1 at 5, 10, and 16). Each of the three informal grievances were dated by Plaintiff on October 21, 2014, indicating that is the date they were submitted. *Id.* However, the form indicates the grievance was not received until October 31, 2014,[5] and a response was provided that same day. Doc. 4-

---

[4] It appears that Plaintiff wrote three informal grievances because they are not identical, although they are verbatim. An inmate would only need to have submitted one informal grievance and it is unclear why three were written, all on the same date, and directed to the same official.

[5] There is no indication why it took 10 days for the informal grievance to be received.

1 at 5.  The informal grievance was denied and Plaintiff was informed that under Rule 33-503.001, "religious beliefs do not justify violation of Department or Institutional rules and regulations." *Id.*  In the upper, right hand corner of the form is a notation which reveals that at the time Plaintiff submitted that informal grievance he was housed at RMC (the Reception and Medical Center) in Lake Butler, Florida. *Id.*

Plaintiff then submitted a formal grievance to the warden on November 6, 2014. Doc. 4-1 at 9, 15.[6]  Plaintiff stated that he was submitting his grievance because the assistant warden had "not responded within 10 days," and he advised that he had put his informal grievance in the grievance box on October 21, 2014. *Id.*  Plaintiff complained that his religious rights were violated when he was ordered to have a shave and haircut. *Id.*  The notation on that form shows Plaintiff was still housed at "RMC West Unit" on that date. *Id.*

A response was provided to the formal grievance (grievance log number 1411-209-061) on December 4, 2014.[7]  Doc. 4-1 at 8.  The response advised Plaintiff that his formal grievance was "being returned without processing because [Plaintiff] did not attach the informal grievance and response, or provide a valid reason for by-passing

---

[6] It appears that Plaintiff wrote two formal grievances and, similar to the informal grievance, the formal grievances are verbatim but not identical.  One copy contains information under the heading "Receipt for Appeals Being Forwarded to Central Office" the other copy is blank.  Doc. 4-1 at 9, 15.  Under the receipt information is a notation showing that the grievance was submitted on November 18, 2014.  Again, it is unclear why Plaintiff would have written the grievance on November 6th but not submitted it until November 18th.

[7] A December 4th response would be untimely if Plaintiff had submitted the grievance on November 6th because that is a difference of 28 days and the rules provide that a response must be provided within 20 days.  However, if the formal grievance was not actually submitted until November 18th as indicated on the bottom of the form, the response would be timely (16 days).  *See* doc. 4-1 at 9.

Case No. 4:15cv173-RH/CAS

this step." *Id.* Plaintiff was informed that if he wanted "to pursue [that] matter, [he could] refile after correcting the stated deficiency within 15 days of the date of [that] response." *Id.* A notation at the end of the response provided: "Informal Grievance SWP Log #14-1051 dated 10-21-14 was receipted by staff on 10-22-14. The response was mailed to [Plaintiff] on 10-31-14." The response indicates that Plaintiff was housed at Holmes C.I. on that date. *Id.; see also* doc. 8 at 10.

Plaintiff then submitted a grievance appeal to the Secretary (grievance log number 14-6-37879) which he dated November 20, 2014. Doc. 4-1 at 12, 14; *see also* doc. 8 at 14. Plaintiff said he was submitting his appeal "because [he] filed grievances at the institutional level, and [had] been denied due process to a response pursuant to Rule 33-103.005, and Rule 33-103006, F.A.C." Doc. 4-1 at 12, 14.

Plaintiff clearly had not yet received a response to his formal grievance at the time he submitted this appeal to the Secretary's Office on November 20, 2014. An obvious problem with this submission is that Rule 33-103.011 provides prison officials with "up to 20 calendar days from the date of receipt of the grievance to take action and respond." FLA. ADMIN. CODE R. 33-103.011(3)(b). Because Plaintiff submitted his formal grievance on November 6, 2014, and the appeal November 20, 2014, *see* doc. 4-1 at 9, 14, this appeal was submitted prematurely.

Not surprisingly, the response provided to Plaintiff on grievance log number 14-6-37879, advised that his "request for administrative appeal [was] in non-compliance with the Rules of the Department of Corrections . . . . Doc. 4-1 at 11, 13. It was explained that the rules required him to first submit his "appeal at the appropriate level at the institution" and provide a copy of that document. *Id.* The response stated that "review

of RMC West's formal grievance log[8] reveal[ed] no formal grievances received from" Plaintiff. *Id.* It was also noted that Plaintiff had been "transferred 4 times since 10/13/14." *Id.* Plaintiff was given "an additional 15 days from the date this response was mailed . . . to resubmit [his] grievance at [his] current location in compliance with" the rules. *Id.* Plaintiff was directed to attach a copy of that response to his re-filed grievance. *Id.* That grievance appeal was returned without action, dated December 1, 2014. *Id.*

Plaintiff then submitted a second grievance appeal to the Secretary's Office on December 23, 2014. Doc. 4-1 at 7; doc. 8 at 9. In that appeal, log number 14-6-4155, Plaintiff explained the problems he had experienced in submitting his grievances. Plaintiff complained that he did not receive the response to his formal grievance until December 22, 2014, although it was dated December 4, 4014. Doc. 4-1 at 7.[9] Plaintiff acknowledged that it was returned without processing, but he said in his appeal that he had submitted his informal grievance but "never receive[d] a receipt or response from staff when he was in transit." *Id.* Plaintiff further acknowledged that the informal grievance was returned to him from the Secretary's Office with the response to his appeal dated December 1, 2014. *Id.* Plaintiff argued that he had "been deprived and

---

[8] It is possible, although unexplained, that Plaintiff's formal grievance was never logged in at RMC because Plaintiff was transferred to Homes Correctional Institution. As noted above, by the time a response to his formal grievance was provided, Plaintiff was at Holmes C.I. although he indicated he was at "RMC West Unit" when he submitted the formal grievance. *See* doc. 4-1 at 8-9.

[9] Plaintiff mistakenly reported that it was "dated 12-14-14" but it was not; it was dated December 4, 2014. *See* doc. 4-1 at 7-8.

Case No. 4:15cv173-RH/CAS

hindered from exhausting administrative remedies by staff" and requested that a response be provided to the merits of the allegations raised in his grievances. *Id.*

A response was provided to Plaintiff's second grievance appeal, log number 14-6-341559, on January 27, 2015.  Doc. 4-1 at 6.  In response to Plaintiff's complaint that he never received a response to his informal grievance, Plaintiff was advised that a copy of his informal grievance was attached.  *Id.*  Plaintiff was then directed to re-file his formal grievance and he was advised to resubmit his grievance at his current location within 15 days.  *Id.* at 6.  Plaintiff was also directed to attach a copy of that response from the Secretary's Office to his re-filed grievance, presumably as authorization for proceeding at that late date.  Doc. 4-1 at 6.  It does not appear that Plaintiff ever re-filed the formal grievance as instructed.

**Analysis**

It is apparent that Plaintiff encountered difficulties in completing the grievance process, some of which was due to his transfers.  However, Plaintiff was given several opportunities to complete the grievance process but he did not do so.  Twice, he was given an additional 15 days in which to correct deficiencies at the formal grievance step and submit a grievance which could be responded to on the merits.  Plaintiff never did so.  His only formal grievance was "returned without processing."  Doc. 4-1 at 8.

First, Plaintiff mistakenly believed at the time he submitted his formal grievance that he had not been given a response to his informal grievance and could proceed to the next step.  The response advised Plaintiff that his formal grievance had, indeed, been responded to by staff and was mailed to him on October 31, 2014.  He was, thus, required to attach that response to his formal grievance and was provided 15 days in

which to re-file his formal grievance.  Plaintiff did not take advantage of that opportunity to exhaust administrative remedies.  Rather than resubmit the formal grievance with the required informal grievance attached, Plaintiff sought to advance in the process and prematurely submitted a grievance appeal on November 20, 2014.  That appeal was insufficient because it was untimely and because the formal grievance did not comply with the rules.  Plaintiff's second grievance appeal, submitted on December 23, 2014, does not demonstrate exhaustion either because it still was not in compliance with the rules.  Plaintiff was required to attach copies of his prior informal grievance, formal grievance, and responses to his appeal.  Because Plaintiff never filed a formal grievance in compliance with the rules, his grievance appeals were not in compliance either.

This does not appear to be a situation in which Plaintiff was unable to complete the grievance process due to interference by prison staff.  Plaintiff has not been hindered in his efforts to file grievances.  Rather, prison officials provided Plaintiff with copies of documents he had previously indicated he had not received, and gave him opportunities to correct the deficiency at the prior step in the grievance process.  There has been no showing that Plaintiff ever complied and followed "the 'critical procedural rules' governing the grievance process."  Woodford, 548 U.S. at 95, 126 S.Ct. at 2388 (quoted in Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir.  2015)).

The Court noted in Woodford that "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."  548 U.S. at 95, 126 S.Ct. at 2388.  As an example, the Court noted that the PLRA had not created "a

toothless scheme" which would permit a prisoner who wished "to bypass available administrative remedies" to simply file a late grievance, have it rejected as untimely by prison officials, and then proceed directly to federal court.  *Id.*  In this case, Plaintiff cannot file a premature appeal or avoid compliance with procedural rules and bypass the administrative process.  Plaintiff was provided an available administrative remedy, and it must be properly exhausted before proceeding to federal court.  Because Plaintiff has not shown that he did so, the motion to dismiss, doc. 4, should be granted.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, doc. 4, be **GRANTED** as Plaintiff did not exhaust administrative remedies as required by 42 U.S.C. § 1997(e), and the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on June 24, 2015.

    S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:15cv173-RH/CAS